UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK L. BUMPUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 18-1246-JDT-cgc |
| | ) | |
| DYERSBURG, TENNESSEE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ORDER DENYING MOTION TO PROCEED *IN FORMA PAUPERIS* AS MOOT,
PARTIALLY DISMISSING COMPLAINT, DIRECTING THAT
PROCESS BE ISSUED AND SERVED ON THE REMAINING DEFENDANTS,
AND DENYING MOTIONS FOR APPOINTMENT OF COUNSEL

On October 1, 2018, Patrick L. Bumpus, currently incarcerated at the Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee, filed a *pro se* civil complaint and a motion to proceed *in forma pauperis* in the U.S. District Court for the Eastern District of Tennessee. (ECF Nos. 1 & 2.) Bumpus's allegations concern his previous incarceration at the Dyer County Jail (Jail) in Dyersburg, Tennessee.[1] Bumpus moved for a change of venue to the Western District of Tennessee, which was granted. (ECF Nos. 7 & 9.) This Court issued an order on December 18, 2018, granting leave to proceed *in forma pauperis*

---

[1] Bumpus alleges he was a pretrial detainee at the Jail from December 11, 2017, through May 8, 2018, when he was sentenced, and returned to the Jail and remained there until he was transferred to the TTCC on June 20, 2018. (ECF No. 16-12 at PageID 57.)

and assessing the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 12.)

On January 3, 2019, Bumpus filed a second motion to proceed *in forma pauperis*. (ECF No. 14.) That motion is DENIED as moot. The same day Bumpus filed an amended complaint, which supersedes the original complaint. (ECF No. 16.) The Clerk shall record the Defendants as Dyersburg, Tennessee; the Dyer County Sheriff's Office; Lieutenant Alan Bargery; Corrections Officer First Name Unknown (FNU) Campbell; and Paul Forester, Dyer County Jail Chaplain. Bumpus sues Defendant Bargery in his individual capacity and sues Defendants Campbell and Forester in their individual and official capacities. (ECF No. 16-1 at PageID 25-28.)

Bumpus alleges he is a Sunni Muslim and that Defendant Forester denied him "the freedom to practice his religion (or) meet with a religious leader" and to receive "religious materials from outside vendor's [sic]." (ECF No. 16-12 at PageID 57-58.) He alleges the Jail attempts to "Christianize" inmates by offering only "Christian based programs" and encouraging the inmates to "practice only Christianity bylaws, & to choose Christianity over all world religions." (*Id.* at PageID 58.) He asserts that "you have to be or become a Christian to be accepted" at the Jail. (*Id.* at PageID 59.) Bumpus contends that the Jail's policies, and Defendant Forester's enforcement of those policies, are restricting his religious practices and discriminating against him because of his religion in violation of the First and Fourteenth Amendments. (*Id.*; ECF No. 16-1 at PageID 29.)

Bumpus alleges the Jail also does not provide a means "to petition the Government for a redress of grievances" or a reasonable law library. (ECF No. 16-12 at PageID 59.)

He asserts that the inadequate law library deprived him of access to the courts, prevented him from preparing a defense in his criminal case as a pretrial detainee, and forced him to plead guilty. (*Id.* at PageID 60.) Bumpus asserts that Defendant Bargery controls the legal library and should be responsible for its operation. (*Id.* at PageID 61.) He also alleges that Bargery failed to respond to his grievances about the law library and thereby denied him due process. (ECF No. 16-1 at PageID 29-30.)

Bumpus alleges that, once convicted, he worked on a litter crew for the Jail, picking up trash in Dyer County. (ECF No. 16-12 at PageID 62.) Defendant Campbell supervised the litter crew and allegedly made Bumpus pick-up trash in "dangerous locations" without gloves or "lit[t]er sticks," leading Bumpus to contract poison ivy. (*Id.* at PageID 62-63.) Bumpus alleges that Campbell refused Bumpus medical treatment for his poison ivy reaction, calling it "heat bumps." (*Id.* at PageID 64.) Campbell allegedly also made Bumpus work despite feeling ill, made him help load leftover food from a food drive into Campbell's sister's truck while instructing the crew workers not to tell anyone "because what happens in the truck stays in the truck," required him to pick up trash near Campbell's family members' houses, and made him wait in the litter truck while Campbell involved himself with an armed domestic-abuse suspect. (*Id.* at 65-66.)

Bumpus also alleges that Campbell made comments to and took actions toward Bumpus and another inmate, both of whom are African American, that were discriminatory and racist and treated them differently from another worker, who is white. (*Id.* at PageID 63-64.) On one occasion, Campbell allegedly allowed the white worker to avoid picking up trash near a dead deer "infested with tic's [sic]" but made Bumpus and the other

3

non-white worker do the work. (*Id.* at PageID 64.) Bumpus and his coworker required medical attention after this incident. (*Id.* at PageID 65.) Bumpus alleges that he notified Defendant Bargery about the problems with Campbell but "nothing was said or done." (*Id.* at PageID 66.) On another occasion, Campbell allegedly approached Bumpus and the other African American inmate while clutching his pistol and said, "Ya'll bitches got something to say, say it r[ight] now." (*Id.* at PageID 67.) Bumpus alleges that Campbell later lied about wanting to keep the two inmates on his working crew to avoid being punished for calling them "bitches." (*Id.*)

Bumpus and his coworker eventually were fired and replaced by white inmates. (*Id.* at PageID 68.) Bumpus was told he was fired because he had poison ivy, and his coworker was fired because "Campbell don't like black people." (*Id.* at PageID 68-69.) Bumpus grieved the firing to Defendant Bargery, who assured Bumpus he would get another job to continue earning sentence credits. (*Id.* at PageID 69.) When Bumpus heard nothing, he sent a second grievance to Bargery who, Bumpus alleges, retaliated against him by transferring him into TDOC custody. (*Id.* at 69-70.) Bumpus alleges that, per TDOC policy, his notes and grievances from the Jail were destroyed along with personal items and paperwork from his case. (*Id.* at PageID 70.)

Bumpus seeks declaratory and injunctive relief, $50,000 each in compensatory and punitive damages against each Defendant plus costs, and a return of his sentence credits allegedly lost from his transfer. (*Id.* at PageID 72-73.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint─

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for

5

failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Bumpus filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

*Municipal Liability and Official Capacity Claims*

Bumpus's official capacity claims against Defendants Campbell and Forester are properly construed as against their employer, Dyer County. Because a county sheriff's office is not an entity subject to suit, his claims against the Dyer County Sheriff's Office also are against Dyer County. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Those claims are analyzed together with those against the City of Dyersburg.

When a § 1983 claim is made against a municipality or county, the court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality or county is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). A local government

such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). A municipality may be held responsible for a constitutional deprivation only if there is a direct causal link between a municipal policy or custom and the alleged deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993).

To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).

Bumpus does not assert that the alleged violation of his rights was because of a custom or policy of Dyer County or the City of Dyersburg. He instead alleges that the Jail instituted policies that Defendant Forester enforced and that violated his rights under the First and Fourteenth Amendments. Bumpus does not allege that Dyer County, or the Jail's

7

authorized decisionmaker, approved the policies that he alleges the Jail followed.[2] *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 405 (1997) (noting that, to hold a municipality culpable in a suit under § 1983, Plaintiff must show "that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right"). He therefore fails to connect the alleged policies to Dyer County or the City of Dyersburg. Similarly, with respect to his claims regarding his job with the Jail's litter crew, Bumpus attributes the deprivations of his rights to the actions of Defendants Campbell and Bargery. Bumpus's claims, therefore, are against those individuals that he asserts violated his rights and not the city or county in which they worked. Dyersburg and Dyer County are therefore DISMISSED as Defendants.

*First Amendment – Free Exercise and Establishment Clauses*

Bumpus asserts that Defendant Forester's enforcement of the Jail's alleged religious policies violated both the Free Exercise and Establishment Clauses of the First Amendment. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The First Amendment is applicable to the States through the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

Although "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates "clearly retain protections afforded by

---

[2] The decisionmaker for the Jail is the Sheriff of Dyer County. *See Wright v. Fentress Cnty., Tenn.*, 313 F. Supp. 3d 886, 890–91 (M.D. Tenn. 2018) (citing cases). Bumpus does not name, or allege unlawful actions by, the Sheriff in his complaint.

8

the First Amendment," including the right to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (quotation omitted). Though prisoners retain a First Amendment right to the free exercise of their religion, "'the circumstances of prison life may require some restrictions on prisoners' exercise of their religious beliefs.'" *Hayes v. Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011) (quoting *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)).

Bumpus alleges the Jail seeks to "Christianize" its inmates by offering only Christian-based programs and materials and denying him any opportunity to practice his non-Christian religion. He asserts that Defendant Forster executes and encourages the policies. Accepting Bumpus's factual allegations as true, his complaint states a plausible claim that he has been denied the free exercise of his religion. In addition, "[t]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). Bumpus therefore also alleges a violation of the Establishment Clause. The Court will allow these First Amendment claims to proceed against Defendant Forester.

*First Amendment – Right to Access the Courts, Grievance Procedures*

Bumpus alleges that the Jail denies pretrial detainees grievance procedures and has only an inadequate law library. He also alleges that Defendant Bargery failed to respond to his grievances and should be held responsible for the allegedly inadequate law library.

Bumpus does not state a claim with regard to the Jail's grievance policy. "There is no inherent constitutional right to an effective prison grievance procedure." *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli*

*v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). A § 1983 claim therefore cannot be premised on contentions that the grievance procedure was inadequate. *Id.*

Prisoners and pretrial detainees, however, do retain a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821–22 (1977) (citing *Ex Parte Hull*, 312 U.S. 546 (1941)); *Bell v. Wolfish*, 441 U.S. 520, 545 (1979) (noting that pretrial detainees "retain at least those constitutional rights that [the Supreme Court has] held are enjoyed by convicted prisoners"). To protect this right, prison authorities must "provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. The right to access the courts, however, "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). To have standing to pursue a First Amendment claim that he was denied access to the courts, a prisoner or detainee "must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see Thaddeus-X*, 175 F.3d at 394.

Bumpus does not allege a First Amendment violation regarding his alleged lack of access to the courts. "The tools [*Bounds*] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original). Bumpus's right of access to the courts with regard to his criminal case was therefore satisfied if he had the

assistance of counsel for his criminal trial. *See United States v. Manthey*, 92 F. App'x 291, 297 (6th Cir. 2004) (citing *United States v. Smith*, 907 F.2d 42, 44 (6th Cir. 1990)). Bumpus does not allege that he was denied counsel in his criminal case. He therefore fails to state a claim regarding the Jail's law library or his access to the courts.

*Eighth Amendment – Working Conditions*

Bumpus asserts that Defendant Campbell exposed him to dangerous conditions while working on the litter crew and denied him medical treatment for the poison ivy he contracted. When he was working on the litter crew, Bumpus was a convicted prisoner protected under the Eighth Amendment from cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that prison officials acted with the requisite intent, that is, that the officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837-38. The subjective component must be evaluated for each defendant individually.

11

The Sixth Circuit has not directly addressed whether hazardous prison working conditions may state a plausible claim under the Eighth Amendment. However, "other circuits have held that the Eighth Amendment is implicated when prisoners are forced to perform physical labor which is 'beyond their strength, endangers their lives, or causes undue pain.'" *Rayburn v. Blue*, 154 F. Supp. 3d 523, 532 (W.D. Ky. 2015) (quoting *Howard v. King*, 707 F.2d 215, 219 (5th Cir. 1983)); *see Middlebrook v. Tennessee*, No. 07-2373, 2008 WL 2002521, at *11 (W.D. Tenn. May 6, 2008) (citing *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006)); *Bibbs v. Armontrout*, 943 F.2d 26, 27 (8th Cir. 1991) (noting that "the intentional placing of prisoners in dangerous surroundings or the manifestation of deliberate indifference to their safety violates the Eighth Amendment").

Bumpus alleges that Defendant Campbell ordered him to pick up trash in ditches and swamps without protective items like gloves and litter sticks (used to spear and lift the trash without having to touch it with his hands). Bumpus contracted poison ivy, which Campbell alleged called "heat bumps" and ordered Bumpus to continue working. Campbell also allegedly made Bumpus pick up trash—with his hands—in a ditch containing dead animals and infested with ticks and wait in a truck at "the scene of [a] crime" where a man had a gun.

With the exception of the allegation regarding the armed man, the alleged working conditions may have been undesirable and hazardous but were part of working in an outdoors environment and do not constitute the sort of dangerous working conditions that meet the objective component of an Eighth Amendment claim. *See Vaughn v. City of*

*Lebanon*, 18 F. App'x 252, 274-76 (6th Cir. 2001) (concluding that non-permanent cuts, bruises, and abrasions analogized "to a case of 'poison ivy,'" and delayed treatment for those injuries, did not constitute serious medical need for purposes of Eighth Amendment claim); *Clarke v. Collins*, 5 F.3d 1494, at *2 (5th Cir. 1993) (unpublished) (holding that inmate's alleged uncomfortable working conditions, "including the episodes with fire ants, poison ivy, cold weather, and cotton picking, do not raise questions of constitutional magnitude").

Even were the alleged conditions sufficient to satisfy the objective component, Bumpus does not allege that Defendant Campbell knew that Bumpus faced an *excessive* risk to his health or safety and disregarded that risk. Bumpus alleges he was treated for his poison ivy when he initially contracted it and pulled from a work site when his symptoms manifested some time later. His health and safety were not at risk from a delay of that treatment. The only allegation in which Bumpus's life may have been at risk is the incident involving the armed man. Bumpus does not describe the scene or allege that the man was acting dangerously towards others or even knew Bumpus was present at the scene. His allegations that he was taken to a location where a man had a gun are insufficient to evince an excessive risk to his safety. *See Lewis v. McClennan*, 7 F. App'x 373, 375 (6th Cir. 2001) (inmate's allegations of "hypothetical risk of danger to his safety" were "insufficient to state an Eighth Amendment claim"). Overall, Bumpus's allegations do not satisfy either component of an Eighth Amendment claim against Defendant Campbell.

Bumpus seeks to hold Defendant Bargery responsible for Defendant Campbell's actions because he failed to intervene despite Bumpus notifying Bargery about the

13

conditions.  Defendant Bargery, however, cannot be held liable under § 1983 for Campbell's conduct "under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. A supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). Furthermore, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").

*Fourteenth Amendment – Discrimination*

Bumpus alleges that Defendant Campbell discriminated against him during Bumpus's work on the litter crew, in violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a

fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)).

Bumpus's allegations of discrimination by Defendant Campbell include commenting that a black couple seen in a predominately white neighborhood "got to be doing something illegal," referring to the black inmates as "ya'll" but calling the white inmate by his name, forcing Bumpus and another black inmate on one occasion to do work a white inmate did not want to do and without appropriate protective equipment, becoming irrationally incensed at the black inmates on one occasion, and firing Bumpus and the other black inmate and replacing them with white inmates. Another correctional officer also allegedly told Bumpus that the second black inmate was fired because Campbell "don't like black people."

Bumpus is African American and therefore a member of a protected class. Defendant Campbell's alleged comments, however, are insufficient to constitute a constitutional violation. *See Jones v. Porter*, No. 99–1326, 2000 WL 572059, at *2 (6th Cir. May 1, 2000) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)) (denying inmate's equal protection claim because "a prison official's verbal harassment or idle threats do not rise to a constitutional level"). Bumpus alleges that he was not given protective equipment while working but neither, he alleges, was the white inmate in the litter crew. (ECF No. 16-1 at PageID 34.) Bumpus alleges that he and another black inmate were fired and replace by white inmates, but he also alleges that he was told he was

15

fired because he was not meeting work expectations.³ (*Id.* at PageID 35; ECF No. 16-8 at PageID 47.)

However, Bumpus also alleges that on one occasion, he and the other black inmate were ordered to pick up trash from a ditch infested with ticks and containing dead deer because the white inmate refused to do it. When the black inmates also refused, Campbell "became angry" and told the inmates they would lose their jobs if they did not do what he told them to do. (ECF No. 16-12 at PageID 64.) When the inmates asked why the white inmate was allowed to refuse the order, Campbell said, "Don't worry about [him], worry about yourself." (*Id.*) This allegation, on its own, is thin and does not necessarily suggest a discriminatory basis for Campbell's actions. Taking into account Bumpus's allegations regarding Campbell's possibly racist comments and other treatment of the black inmates as compared to the white inmate, however, Bumpus's allegation plausibly states a discriminatory basis for this differential treatment of the workers based on their race. The Court will allow this claim to proceed.

*First Amendment – Retaliation*

Bumpus alleges that Defendant Bargery retaliated against him for filing grievances by transferring him from the Jail to a TDOC facility. The Court reviews retaliation claims under the First Amendment. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005)

---

³ Bumpus asserts that reason was a ruse because he has seen other injured workers slow their performance without being fired. (ECF No. 16-1 at PageID 35.) Bumpus does not allege, however, that those workers were white or that their conditions or work performance were similar to his.

("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution."). A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X*, 175 F.3d at 394. "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391. "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a grievance is protected conduct. *Hill*, 630 F.3d at 472. However, "[a] transfer to the general population of another prison is not considered sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights." *Jewell v. Leroux*, 20 F. App'x 375, 378 (6th Cir. 2001). Bumpus does not allege that he was transferred into more restrictive housing in the TDOC. Although he alleges some of his property was destroyed in the process, he does not allege that Defendant Bargery was responsible. He instead alleges that the TDOC "classification unit" has a policy of destroying the property of transferees. (ECF No. 16-12 at PageID 70.) Bumpus therefore does not allege an adverse action in response to his protected conduct.

Moreover, Bumpus asserts a causal connection between his grievances and his transfer but fails to allege facts showing one. He states his transfer occurred after he had filed his grievances but does not allege whether the two events were sufficiently close in time to allow the Court to infer a retaliatory motive. *See King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (noting that "temporal proximity between protected conduct and retaliatory acts" when close enough may "creat[e] an inference of retaliatory motive"). Bumpus provides no further information to show the existence of a causal connection between his grievances and transfer. His allegations do not suffice to state a claim of retaliation against Defendant Bargery.

*Fourteenth Amendment – Loss of Job and Sentence Credits*

Bumpus alleges that Defendant Bargery deprived him of sentence credits by refusing to reassign him to another prison job. Bumpus, however, has no Fourteenth Amendment property or liberty interest in his prison job, and the loss of a prison job does not violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) ("Although job and educational opportunities diminished marginally, . . . deprivations of this kind simply are not punishments. We would have to wrench the Eighth Amendment from its language and history to hold that delay of these desirable aids to rehabilitation violates the Constitution."); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no property or liberty interest in prison employment); *Ivey*, 832 F.2d at 955 ("It is well established, however, that no prisoner has a constitutional right to a particular job or to any job."). Nor does Bumpus have a right under the Constitution to earn or receive sentence credits. *See Hansard v. Barrett*, 980 F.2d 1059, 1062 (6th Cir. 1992).

*Injunctive Relief*

Bumpus seeks permanent injunctions against the Defendants. Because he is no longer at the Jail, however, his request for injunctive relief is moot. *Moore v. Curtis*, 68 F. App'x 561, 562 (6th Cir. 2003) (claims for declaratory and injunctive relief against prison staff moot when inmate transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same).

In conclusion, the Court DISMISSES Bumpus's claims against Dyer County, Dyersburg, and Defendant Bargery and DISMISSES his official capacity claims against all of the Defendants for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

The Clerk is ORDERED to issue process for Defendants Forester and Campbell and deliver that process to the U.S. Marshal for service.[4] Service shall be made on Defendants Forester and Campbell pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Bumpus shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendants Forester and Campbell.

---

[4] The claims allowed to proceed against Defendant Forester are that he violated the First Amendment's Free Exercise and Establishment Clauses by not allowing Bumpus to practice his religion. The sole claim remaining against Defendant Campbell is that he discriminated against Bumpus on the basis of race by requiring him to pick up trash in a ditch that was tick-infested and contained dead deer while not requiring the white inmates on the work crew to do so.

Bumpus shall make a certificate of service on every document filed. Bumpus shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[5]

Bumpus shall promptly notify the Clerk of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

Bumpus also twice moved for appointment of counsel. (ECF Nos. 3 & 15.) A district court is vested with broad discretion in determining whether to appoint counsel for an indigent civil litigant. *See Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). Appointment of counsel in a civil case is not a constitutional right, and courts generally do not appoint counsel in a civil case absent a showing of "exceptional circumstances." *Id.* at 605-06; *see also Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993) ("The key [to determining whether exceptional circumstances exist] is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help.") The Court concludes that appointment of counsel is not warranted at this time. Bumpus's requests for appointment of counsel are therefore DENIED without prejudice.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[5] A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.