# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | | |
|---|---|---|
| PATRICK L. BUMPUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 18-1246-JDT-cgc |
| | ) | |
| DYERSBURG, TENNESSEE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER TO MODIFY THE DOCKET, DENYING PLAINTIFF'S MOTIONS TO
RECONSIDER AND TO AMEND, DENYING MOTIONS TO APPOINT COUNSEL,
GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL DISCOVERY,
AND ALLOWING PLAINTIFF AN EXTENSION OF TIME TO
RESPOND TO DEFENDANTS' SUMMARY JUDGMENT MOTION

On September 10, 2019, this Court partially dismissed the amended complaint filed by the *pro se* prisoner Plaintiff, Patrick L. Bumpus, pursuant to 42 U.S.C. § 1983. (ECF No. 23.) The remaining Defendants, Paul Forster and Charles "Chuck" Campbell, were served with process and have responded to Plaintiff's amended complaint.[1] Bumpus's claims concern events occurring at the Dyer County Jail (Jail) in Dyersburg, Tennessee.

Bumpus filed a motion to reconsider the partial dismissal on September 30, 2019, (ECF No. 25), and a motion to file second amended complaint on October 2, 2019, (ECF No. 26). He

---

[1] Bumpus identified Defendant Campbell only by his last name. Later documents filed by Campbell reveal his name is Charles "Chuck" Campbell. (*See* ECF No. 32 at PageID 213; ECF No. 55-3 at PageID 416.) Later documents also reveal Bumpus's spelling of Defendant Forster's last name was incorrect. (*See* ECF No. 32 at PageID 213; ECF No. 55-4 at PageID 423.) The Clerk therefore is directed to MODIFY the docket to include Defendant Campbell's full name and to correct the spelling of Defendant Forster's last name.

filed the same proposed second amended complaint on December 23, 2019, (ECF No. 34), and the same motion for reconsideration on December 26, 2019, (ECF No. 37). Defendants have responded in opposition. (ECF Nos. 40 & 42.)

In his motions to reconsider and to amend, Bumpus first takes issue with the dismissal of his claim that Defendant Campbell violated the Eighth Amendment by requiring him to do work while on the litter crew that was hazardous in nature, *i.e.*, picking up trash out of ditches without providing him with appropriate protective equipment. He again alleges he was required to pick up the carcasses of dead animals and trash that contained ticks and spiders with his bare hands. (ECF No. 25 at PageID 178; ECF No. 26 at PageID 187-88.) Bumpus now asserts that requiring him to do so was "beyond [his] strength." (ECF No. 25 at PageID 178; ECF No. 26 at PageID 188.) However, he alleges only that the physical labor caused "pains in our body" so that it "became difficult for us to perform normal tasks which slowed down our normal performance."[2] (ECF No. 26 at PageID 188.) In other words, the physical exertion made his body ache. Bumpus also states that he contracted poison ivy and that Campbell refused him medical attention. However, as stated in the order of partial dismissal, requiring inmates to perform work in an outdoor environment that has some element of danger does not necessarily amount to an Eighth Amendment violation. Neither the working conditions described by Bumpus nor the alleged lack of treatment for his poison ivy were so excessive that they rise to the level of a constitutional violation.[3]

---

[2] The "our" apparently includes another non-white inmate on the litter crew.

[3] Bumpus alleges Campbell refused him medical treatment for the poison ivy, but he also alleges Campbell gave him the option to continue working or be fired and return to the Jail. (ECF No. 26 at PageID 188.) However, Bumpus does not describe what Campbell should have done about the poison ivy while the crew was still out on the job. In addition, though he alleges Campbell refused to allow him medical attention for five days, Bumpus alleged in his first amended complaint that a nurse at the Jail treated him for the poison ivy right after he contracted it. (ECF No. 16-12 at PageID 65.)

2

Bumpus essentially concedes that the working conditions themselves were not sufficiently hazardous to violate the Eighth Amendment when he says, in his motion to reconsider: "It is not a matter of picking up trash; which is a part of the [litter] crew duty; it is a matter of cruel and unusual punishment when defendant Campbell enforced duties on the people of color . . . when these same sanctions were not imposed on the non-color [litter] crew workers." (ECF No. 25 at PageID 178.) However, the Court did *not* dismiss the claims that Campbell discriminated against Bumpus by treating Bumpus differently than white inmates. Those claims, which arise under the Fourteenth Amendment's Equal Protection Clause instead of the Eighth Amendment's prohibition against cruel and unusual punishment, were allowed to go forward.

The Court also finds no error in the dismissal of the claim that Campbell put Bumpus and the litter crew in danger by taking them to a police call where an armed man was holding a woman hostage. The mere fact that Bumpus was present at the scene does not violate the Eighth Amendment, and he does not allege he was ever close enough to the individual with the weapon to be in actual harm's way.

Bumpus additionally asks for reconsideration of his First Amendment retaliation claims against Defendant Bargery. He now alleges in the proposed second amended complaint that Bargery put him in segregation at the Jail "for no apparent reason" the same day Bumpus filed a grievance against Campbell about being fired from the litter crew. (ECF No. 26 at PageID 189-90.) When Bumpus then filed another grievance about being put in segregation,[4] he allegedly was shipped the next morning to the Bledsoe County Correctional Complex (BCCX), a Tennessee

---

[4] Neither the grievance against Campbell for the firing nor the grievance Bumpus says he then filed complaining about segregation appear to be in the record.

3

Department of Correction (TDOC) facility that he asserts is a restrictive housing unit. (*Id.* at PageID 190-92.)

The Sixth Circuit has stated that "temporal proximity between protected conduct and retaliatory acts" when close enough *may* "creat[e] an inference of retaliatory motive." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). However, the Court of Appeals has also warned against "drawing an inference of causation from temporal proximity alone." *LaFountain v. Mikkelsen*, 478 F. App'x 989, 993 (6th Cir. 2012). "Whether temporal proximity establishes an inference of retaliatory motive depends upon the totality of the circumstances." *Id.*; *see also Sublett v. Sheets*, No. 5:15-CV-00199-TBR, 2017 WL 2385351, at *8 (W.D. Ky. June 1, 2017) (quoting *LaFountain*).

To infer that his placement in segregation at the Jail was retaliatory, Bumpus relies solely on the temporal proximity between his grievance and that assignment. He does not allege that Bargery or anyone else at the Jail made threats or comments suggesting an improper motive or took any other action from which retaliation could be inferred. Without more, the Court concludes he has not stated a claim of retaliation with regard to his assignment to segregation at the Jail.

As to Bumpus's allegedly retaliatory transfer to the BCCX, he was transferred from segregation at the Jail to what he contends was another restrictive housing assignment. Transfer from one restricted housing unit to another generally does not constitute an adverse action sufficient to support a claim of retaliation. *Cf. Powell v. Washington*, 720 F. App'x 222, 227 (6th Cir. 2017) (Prisoner "failed to state a First Amendment retaliation claim because his transfer from administrative segregation in one institution to administrative segregation in another institution

4

was not an adverse action sufficient to deter a person of ordinary firmness."). Moreover, Bumpus does not allege that Bargery had anything to do with his TDOC classification.[5]

For all of these reasons, Bumpus's motions to reconsider and to amend are DENIED.

Bumpus also has filed three additional motions for appointment of counsel. (ECF Nos. 36, 38 & 56.)[6] Pursuant to 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel." However, "[t]he appointment of counsel in a civil proceeding is not a constitutional right." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *see also Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("[T]he plaintiffs were not entitled to have counsel appointed because this is a civil lawsuit."); *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993) (no constitutional right to counsel in a civil case); *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993) ("There is no constitutional or . . . statutory right to counsel in federal civil cases . . . ."). Appointment of counsel is "a privilege that is justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606 (internal quotation marks and citation omitted).

"In determining whether 'exceptional circumstances' exist, courts have examined the type of case and the abilities of the plaintiff to represent himself. This generally involves a determination of the complexity of the factual and legal issues involved." *Id.* at 606 (internal quotation marks and citations omitted). Appointment of counsel is not appropriate when a *pro se* litigant's claims are frivolous or when his chances of success are extremely slim. *Id.* (citing *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985)); *see also Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (same). "[I]n contrast to criminal defendants, civil litigants unable to afford

---

[5] Even if Bargery could have influenced Bumpus's TDOC placement, the Court finds it implausible that Bargery was able to contact TDOC, obtain a facility assignment, and arrange for Bumpus's transfer in less than 24 hours.

[6] His first two motions to appoint counsel were denied in the order of partial dismissal.

counsel cannot ordinarily" have counsel appointed unless "there is a risk of loss of liberty, as in mental commitment or juvenile delinquency proceedings." *Iannaccone v. Law*, 142 F.3d 553, 556 (2d Cir. 1998), *cited in Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002).

Bumpus first relied only on his incarceration, indigence, and lack of legal experience to argue that appointment of counsel was warranted. These are not "exceptional circumstances" that warrant appointing counsel. In his latest motion filed June 12, 2020, Bumpus argued that the Trousdale Turner Correctional Center (TTCC) where he is housed was locked down because of the COVID-19 pandemic. (ECF No. 56.) He further stated he was "said to be infected" with the virus and so could not "tend to this case as needed." (*Id.*) Though it has been 90 days since the filing of that motion, Bumpus has not updated the Court and the Defendants on his condition or the status of the TTCC.

While Bumpus's positive COVID-19 status and the presence of the illness in his prison could be reasons for granting him additional time in this case, it is not a sufficient reason to appoint counsel. Bumpus has shown himself to be capable of litigating this case on his own. The motions for appointment of counsel are, therefore, DENIED.

Bumpus filed a motion to compel discovery on February 6, 2020. (ECF No. 50.) Defendants have responded in opposition. (ECF No. 51.) Bumpus asks the Court to compel Defendants to fully answer his First Set of Interrogatories and Requests for Production of Documents. Specifically, he seeks responses to Interrogatory Nos. 4, 5, 7, 9 and 11 and to Requests for Production Nos. 3, 4, 5, 6, 7, 8, and 11.

Under both Federal Rule of Civil Procedure 37(a)(1) and Local Rule 7.2(a)(B), Bumpus was required to consult with opposing counsel in an attempt to reach an agreement with regard to discovery without Court intervention. His motion to compel does not include a certificate of

consultation stating he made any attempt to consult, and Defendants' counsel confirms he did not do so. The Court could deny the motion solely on that basis. *See* L.R. 7.2(a)(B) ("Failure to attach an accompanying certificate of consultation may be deemed good grounds for denying the motion."). However, with one exception, Bumpus's motion also must be denied on the merits.

In Interrogatory Nos. 4, 5, 7, 9, and 11, Bumpus seeks very detailed information such as a description and the date of "each" statement or interaction Defendants Forster and Campbell had with him while he was incarcerated at the Jail; "any and all facts" Defendants will rely on in their defense of this case; and a detailed statement of "each [and] every religious faith, belief, practice, or principle" that Defendant Forster "follow[s], believe[s], or practice[s]." (ECF No. 50-1 at PageID 317-320.) Defendants provided some limited information in answer to these discovery requests but also objected to the requests as "overly broad, unduly burdensome, vague, [and] ambiguous," and as seeking information that is unlimited, not proportional, and irrelevant to the issues in this case. Defendants also stated that their investigation of the facts was incomplete at the time. (*Id.* at PageID 326-330.)

Bumpus's Request for Production No. 3 seeks "any relevant photographs, videos or diagrams or other visual representations of any material relevant to the allegation in this complaint." (ECF No. 50-2 at PageID 332.) Defendants responded by objecting that any video footage cannot be provided to him in prison due to security rules that are in place to prevent inmates from using CDs, DVDs, and jump drives as weapons. (*Id.*) In the motion to compel, however, Bumpus asserts the TTCC does allow CDs and jump drives to be received by inmates if the items are stored and used in the prison law library. (ECF No. 50 at PageID 313.) Defendants have indicated that if Bumpus is correct they have no objection to providing him with what they have,

7

which is brief video footage of him working outside the Jail on a work crew.  (ECF No. 51 at PageID 363.)  Defendants therefore will be required to provide Bumpus with that video footage.

In his Request for Production No. 4 Bumpus seeks a list of "all people" who have been to the Jail "to preach or teach to inmates about a religious topic; [and] for every member identified, state their religious belief, practices & religious affiliation."  (ECF No. 50-2 at PageID 332.)  Defendants made a general objection to this request but also stated they do not know all of the people who have spoken to inmates about religious topics and that no such list exists.  (*Id.* at PageID 332-33.)

Bumpus's Request for Production No. 5 asks Defendants to produce "a list of all programs that were or still is; affiliated with the [Jail], since 2010."  He states the list should include the mission statement of each program, the identities of the person in charge and all other non-inmate persons who help with the program, and for each of those individuals their religious background, beliefs and affiliations, and any other religious groups they are a part of.  (*Id.* at PageID 333.)  Defendants generally objected to this Request but also objected because Bumpus does not define "programs" and because there is no list that identifies every possible program affiliated with the Jail and contains the information Bumpus seeks.  (*Id.*)

Bumpus also seeks a list of the names of every person incarcerated at the Jail from January 2017 to January 2019, and a copy of a "face identification sheet" for each listed inmate.  (Req. for Prod. No. 6, *id.*)  Defendants objected generally and also because no such list exists.  Defendants also noted that even if there were such a list it would be inappropriate to reveal the personal information of other inmates.  (*Id.*)

In Request for Production No. 7, Bumpus seeks a list of all staff members who worked at the Jail from January 2017 to January 2019 and states the list should include: each staff member's

religious beliefs and background; whether they help run any Jail programs and, if so, a description of their work duties. (*Id.* at PageID 333.) Defendants objected generally and also stated that no such list exists. In addition, Defendants stated they do not know the religious beliefs and backgrounds of every Jail staff member. (*Id.* at PageID 334.)

> Request for Production No. 8 is as follows:
>
> Provide a copy of the Dyer County Jail program contract, starting from the year 2010-to present. In this contract included provide: who funds each enlisted program, program criteria, who all have been placed in each program, the importance of the funded program, why program was created, it's [sic] mission statement, qualification to be considered inside enlisted program, and the date each program listed was created, and if the program is no longer available list that program's end date.

(*Id.*) Defendants justifiably objected to this request as "confusing" because Bumpus does not define "program" or identify the "contract" he seeks. (*Id.*)

Bumpus's Request for Production No. 11 seeks "all complaints filed against the defendants from inmates of the Dyer County Jail and also from non inmates inside & outside of the Dyer County Jail." (*Id.* at PageID 335.) Defendants objected due to the unlimited time frame of the request and to the failure to define "complaints" or limit the request to those that are relevant to the issues in this case. (*Id.*)

With the exception of Request for Production No. 3, Bumpus merely complains in general that Defendants' objections to his discovery requests are not proper without setting forth any specific reasons why the objections are not well taken. Bumpus has made no attempt to explain why the detailed information sought in the Interrogatories or Requests for Production are both relevant and proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1). The motion to compel is, therefore, DENIED.

In conclusion, Bumpus's motions to reconsider and to amend are DENIED. (ECF Nos. 25, 26, 34 & 37.)

The motions to appoint counsel also are DENIED. (ECF Nos. 36, 38 & 56.)

Bumpus's motion to compel discovery is GRANTED only as to the video footage described by the Defendants as responsive to Request for Production No. 3; Defendants are ORDERED, if they have not already done so, to provide Bumpus with that video footage within 14 days after the date of this order. The motion to compel is DENIED in all other respects.

Bumpus is hereby allowed an extension of time, through and including October 30, 2020, to file a response to the Defendants' motion for summary judgment.

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE